IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD GOODE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LOUIS GIORLA, et al. | : | NO. 13-CV-5603 |

MEMORANDUM AND ORDER

Ditter, J.                                                                                        September 29, 2015

Ronald Goode brings this action under 42 U.S.C. § 1983 claiming that he was denied medical care after sustaining a hand injury while imprisoned at Curran Fromhold Correctional Center. Goode contends that Defendant M. Satterfield failed to provide him with emergency care for his injury exhibiting deliberate indifference. Defendant Satterfield has filed a motion for summary judgment on all counts raised against him in the complaint. For the reasons that follow, Defendant Satterfield's motion for summary judgment will be granted.[1]

I. **Factual and Procedural History**[2]

Goode was incarcerated at Curran Fromhold Correctional Center from July 14, 2011, to October 6, 2014. He claims that after dinner on June 23, 2013, he slipped off a

---

[1] All other defendants have been dismissed from this case. On September 9, 2014, Judge Ludwig granted Defendants Michelle Farrell and Louis Giorla's motion to dismiss. (Doc. No. 20). As of this date, Defendants K. McKinney and P.A. Patel are dismissed from the case due to Goode's failure to properly serve them with his complaint.

[2] For purposes of this motion, the facts are viewed in the light most favorable to the plaintiff as the non-moving party.

table while reaching to remove a covering from the cell window. *See Def.'s Ex. B* at 13-15. Goode fell to the floor, injuring his right hand. *See Def.'s Ex. B* at 14-15. After Goode told a correctional officer of the incident and injury, the officer advised him to submit a medical sick call request. *See Def.'s Ex. B* at 14. Goode asked his cell mate to fill out the sick call request because he could not use his right hand. *See Def.'s Ex. B* at 15. The sick call request was completed at 5:30 p.m. on June 23, 2013 (the day of the injury), and states that Goode "broke a bone" in his hand, that the hand was swollen and that he was "in serious pain." *See Def.'s Ex. C.*

Goode saw Nurse Satterfield for his hand injury at approximately 9 p.m. the next day, June 24, 2013. *See Def.'s Ex. B* at 16. During the visit, Goode explained to Nurse Satterfield that he felt that his right hand was broken and asked to see a doctor. *See Def.'s Ex. B* at 16. Goode also reported that the pain in his right hand was an 8 on a scale of 1-10 and complained of symptoms including numbness and tingling. *See Def.'s Ex. D-3-0014.* Nurse Satterfield told him that a doctor was not on duty, looked at his hand, noted that it was swollen, and put a referral in for Goode to see another nurse or physician's assistant the following day. *See Def.'s Ex. B* at 16-17, 54. Nurse Satterfield did not provide Goode with any bandaging or pain relievers. *See Def.'s Ex. B* at 17. This is the only occasion on which Goode saw Nurse Satterfield for his hand injury. *See Def.'s Ex. B* at 22, 34.

Goode saw Physician's Assistant McKinney at 11 a.m. the next day, June 25,

2013.  McKinney gave Goode an Ace bandage, Motrin, and put in a referral for Goode to see J. Patel, another physician's assistant, the next day.  *See Def.'s Ex. B* at 17.

On June 26, 2013, Patel evaluated Goode's hand, opined that it could be fractured, and had an x-ray taken of the hand.  *See Def.'s Ex. B* at 18, 55; *Def.'s Ex. D*-3-0017.  The next day, June 27, 2013, Dr. Bruce Blatt reviewed the x-ray and examined Goode.  The x-ray indicated that Goode had an "[a]cute, slightly displaced and angulated fracture proximal diaphysis of 2nd metacarpal."  *See Def.'s Ex. D*-3-0017.  Dr. Blatt told Goode that his hand was fractured and referred him to Temple Hospital for further treatment.  *See Def.'s Ex. B* at 18, 52, 55.  Dr. Blatt lists Motrin as one of Goode's "current medication[s]."  *See Def.'s Ex. D*-3-0019.

Goode was taken to Temple Hospital on the same day.  While there, a splint was placed on his hand, he was once again prescribed Motrin and doctors discussed the possibility that Goode might require an operation.  *See Def.'s Ex. B* at 19-20; *Def.'s Ex. D*-3-0021-0022.

Goode returned to Temple Hospital on July 19, 2013, for a follow up visit.  *See Def.'s Ex. D*-3-0037-38.  At a visit to Temple two months later, on August 2, 2013, Goode was advised that his hand had healed with a mild displacement which would work appropriately, but would show a lump.  *See Def.'s Ex. B* at 62-63.  As of August 6, 2013, Goode was prescribed Vicodin for his hand pain.  *See Def.'s Ex. B* at 58-59; *Def.'s Ex. D*-3-0036.

An orthopedic consult on October 23, 2013, indicated that Goode's hand showed good alignment and advised against surgery. *See Def.'s Ex. B* at 69; *Def.'s Ex. D*-3-0056.

As of October 28, 2014, Goode stated that his hand still feels "a little bit sore," but he noted that he was able to flex his hand, make a fist and write with that hand. *See Def.'s Ex. B* at 112-113. He also stated that he takes Motrin for back and hand pain. *See Def.'s Ex. B* at 110-111.

## II. Standard of Review

The standard for summary judgment is well established. I must consider the evidence in the light most favorable to the non-moving party. If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

However, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion. *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992). Here, Goode must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1992).

### III. Discussion

In order to demonstrate a viable § 1983 claim for a violation of the Eighth Amendment based on deficient medical care, Goode must show that: 1) prison officials were deliberately indifferent, and 2) his medical needs were serious. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). However, negligent diagnosis or an inadvertent failure to provide care does not establish a constitutional violation. *Estelle*, 429 U.S. at 97, 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). A denial or delay of medical treatment is serious when it results in "unnecessary and wanton infliction of pain" or "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346-347 (3d Cir. 1987) (citing *Estelle*, 429 U.S. at 103).

Accepting all Goode's assertions as true, the facts of this case are very simple. Goode had a fracture of his right hand. A fractured hand is a serious medical condition. *See generally Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). However, no reasonable finder of fact would conclude that Defendant Satterfield was deliberately indifferent to Goode's injury. Goode reported his injury to the corrections officer on duty and was advised to submit a sick call slip - the established procedure for seeking medical treatment. Goode was seen by Defendant Satterfield one day after he submitted the sick call slip. Upon examination, Nurse Satterfield referred Goode to a physician's assistant for evaluation of his hand injury the next morning. Although Goode contends that Nurse

5

Satterfield should have provided a splint, pain medication or immediate comprehensive medical treatment, such a delay in treatment would at most be characterized as negligence. A medical decision not to provide pain relief medication or an immediate x-ray does not represent cruel and unusual punishment which rises to the level of a constitutional violation. *Estelle*, 429 U.S. 107. Moreover, there is no evidence that any alleged delay in treatment of Goode's fractured hand had a detrimental effect. Within four days of his injury, Goode had been treated by a number of health professionals: Nurse Satterfield, two physician's assistants, a doctor and the staff of emergency care services at Temple Hospital. He was provided with pain medication and a splint. Orthopedic evaluation has shown that the hand fracture showed good alignment and that surgery was not advised. *Def.'s Ex. D*-3-0056. In sum, Goode's claim of deliberate indifference against Defendant Satterfield is without factual or legal basis.

### IV. Conclusion

For the reasons set forth above, I find that Goode has failed to present evidence from which a fact-finder could conclude that his constitutional rights were violated. Defendant Satterfield is entitled to judgment as a matter of law because Goode had not presented evidence that he deliberately disregarded Goode's serious medical needs. I shall grant the motion for summary judgment filed by Defendant Satterfield and enter judgment in his favor on all claims raised in the complaint.

An appropriate order follows.